1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| PENG SEE, | ) | 1:09-cv-01751 GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S SOCIAL** |
| | ) | **SECURITY COMPLAINT** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

11
12
13
14
15
16
17
18

19

## **BACKGROUND**

20      Plaintiff Peng See  ("Plaintiff") seeks judicial review of a final decision of the

21 Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22 Supplemental Security Income benefits pursuant to Title XVI of the Social Security Act.  The

23 matter is currently before the Court on the parties' briefs, which were submitted, without oral

24 argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

25
26
27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 9 & 10.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for Supplemental Security Income benefits on January 10, 2005, alleging disability beginning on or around May 12, 2002. AR 18. Her application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* ALJ Christopher Larsen held a hearing on April 4, 2007, and issued an order regarding benefits on June 12, 2007, finding Plaintiff was not disabled. AR 4, 18. Thereafter, on August 4, 2009, the Appeals Council denied review. AR 4.

**Hearing Testimony**

On April 4, 2007, ALJ Larsen held a hearing in Fresno, California. Plaintiff appeared and testified with the assistance of an interpreter. Her daughter, Ms. Nalor See, also appeared as a witness and testified at the hearing. AR 509-510. Plaintiff was represented by attorney Charles Oren. Vocational Expert ("VE") Linda Ferra appeared and testified by phone. AR 509-531.

Plaintiff is uncertain of her age or weight. AR 518. Nonetheless, the medical records establish that Plaintiff was born on June 15, 1955, and was thus fifty-one years old on the date of the hearing. AR 513. She does not understand English and has no formal education. AR 514, 527. Plaintiff attempted to go to school, but her headaches prevented her from doing so. AR 527. She received no formal education prior to coming to the United States. AR 528. Plaintiff does not drive and resides with her husband and two daughters. AR 514-515. Her sons reside elsewhere. AR 515.

Plaintiff relies heavily on a wheeled oxygen tank owing to her breathing problems. AR 515. Plaintiff has been on oxygen for the past year, although she claims the breathing problems started earlier. At home and at night she uses a larger tank. AR 515, 524. Her breathing difficulties prevent her from going outside but for the occasional visit to her doctor. AR 516. According to Ms. Nalor, Plaintiff totes the wheeled oxygen tank wherever she goes. Plaintiff's breathing difficulties prevent her from helping around the house, and her condition has worsened over the years. AR 523.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked how long she could stand, Plaintiff replied "a couple of seconds." AR 517. Plaintiff is unable to walk without assistance from her children, and is unable to stand for any length of time because of her weak knees. AR 516.  At night, the pain is more severe and Plaintiff sometimes has to crawl before she can stand up and walk.  AR 517.  The knee problems started a few years ago, and according to Plaintiff, prevented her from going to work.  *Id*. Plaintiff had been working at a "socks place," but had to discontinue that work because of her inability to stand. *Id*. Plaintiff's knee problems are persistent and make it difficult for her to wear shoes. Therefore, she only wears sandals. AR 518. Plaintiff in neither able to stand nor walk and therefore avoids going anywhere. *Id*. She also experiences numbness in her feet, even when she is asleep, and has difficulty balancing. AR 520. Plaintiff is unable to do any significant lifting due to her knee problems.  Although she suffers from pain in both knees, one is markedly worse than the other. AR 520.  According to Ms. Nalor, one doctor has suggested Plaintiff undergo knee surgery based on his assessment of her x-rays. AR 522. Ms. Nalor testified that Plaintiff has difficulty walking and is in constant pain. *Id*. She often cries when she has to get up and do something. *Id*.

Plaintiff suffers from persistent headaches. "When it gets very bad" she goes to the doctor for an injection.  AR 519.  She sleeps whenever she feels like it and spends much of her day lying down.  *Id*.  Plaintiff also suffers, although infrequently, from headaches that can sometimes be intense, requiring her to stay in bed all day.  AR 523.

Plaintiff has also been prescribed medication for diabetes which she takes "when [she] can't stand it." AR 520.

With regard to back pain, Plaintiff indicated she stays home watching television to rest her leg. AR 523.  According to Ms. Nalor, Plaintiff spends much of her day lying on the couch with her "leg propped up on a pillow."  *Id*.  Although she  tries to help around the house, Plaintiff's inability to stand precludes her from doing so.  AR 524.

When asked if she had to assist Plaintiff with personal hygiene, Ms. Nalor stated that Plaintiff sometimes needs help with her pants.  AR 525.

1   Last year, Plaintiff had applied for work in a North Carolina factory. She would often

2   come home with swollen knees and feet after having been on her feet all day. AR 525. The

3   doctor would recommend a week or so off. However, the constant interruptions prevented

4   Plaintiff from maintaining that employment. *Id.*

5   Although Ms. Nalor recalls Dr. Garcia placing Plaintiff on oxygen, she is not certain of

6   his reasons for doing so. AR 526. Ms. Nalor is not aware of any other medical problems other

7   than those testified to by Plaintiff. *Id.*

8   VE Ferra was asked to consider several hypothetical questions posed by the ALJ. First,

9   the VE was asked to assume a hypothetical worker of Plaintiff's age, education, and work

10  experience who must avoid concentrated exposure to fumes, odors, dust, gasses and poor

11  ventilation. AR 528. The VE indicated that such a person could work as an assembler, and

12  although some settings might have exposure to fumes, dust, and gasses, seventy percent would

13  not have such unusual exposures. *Id.* The number of such jobs at the light level for unskilled

14  employment is approximately 33,000 in California, and approximately 330,000 nationwide. *Id.*

15  At the medium level, there were approximately 15,000 jobs in California and 150,000

16  nationwide. AR 529.

17  The ALJ then asked the VE to consider an additional limitation, i.e., the worker's reliance

18  on oxygen. AR 529. When asked what impact that would have on her assessment, the VE opined

19  that the limitation would preclude the hypothetical worker from working since the constant

20  interruptions would prevent the worker from being competitively employed. *Id.*

21  The ALJ then instructed the VE to consider the above hypothetical worker with a further

22  limitation. AR 529. The VE was asked to assume that this worker could stand and walk a total of

23  three to four hours in an eight-hour workday, and could sit a total of three to four hours in an

24  eight-hour workday. *Id.* According to the VE, there were some sedentary assembler positions

25  ranging in number from 5,000 in California to 50,000 nationwide. The VE then adjusted her

26  answer owing to the limitation on sitting and standing, and further reduced those numbers by

27  forty-five percent.  AR 530.  The VE was not certain of the number of positions in the "light"

28  category, if any,  that would permit Plaintiff to sit. *Id.* The VE believed that theoretically the

4

1   hypothetical worker could work at the level of light exertion, but as a practical matter, the worker

2   was limited to sedentary work. *Id*.

3          **Medical Record**

4          The entire medical record was reviewed by the Court (AR 135-508), however, only those

5   medical records relevant to the issues on appeal will be addressed below as needed in this

6   opinion.

7          **ALJ's Findings**

8          The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

9   May 12, 2002, the alleged onset date, and had the medically determinable impairments of

10  diabetes - non-insulin dependent, headaches, and asthma.  AR 20.

11         Based on his review of the objective medical evidence, the ALJ determined that Plaintiff

12  did not have any severe impairment or combination of impairments that significantly limited her

13  ability to perform basic work related activities for a period of twelve consecutive months. AR 20.

14  In addition, the ALJ found that the Plaintiff had not been under a disability as defined by the

15  Social Security Act since January 10, 2005, the date of her initial application for benefits. AR 23.

16  Therefore, the ALJ determined that Plaintiff was not disabled as defined by the Social Security

17  Act. AR 23.

18                                **SCOPE OF REVIEW**

19         Congress has provided a limited scope of judicial review of the Commissioner's decision

20  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

21  the Court must determine whether the decision of the Commissioner is supported by substantial

22  evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla,"

23  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

24  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

25  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

26  401.  The record as a whole must be considered, weighing both the evidence that supports and

27  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

28  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since January 10, 2005; (2) does not have an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 C.F.R. § 416.920(b)); (3) does not have an impairment or combination of impairments that significantly limits (or is expected to limit significantly) her ability to perform basic work-related activities for twelve consecutive months (20 C.F.R. § 416.921); and (4) has not been under a disability, as defined in the Social Security Act, since January 10, 2005, the date the application was filed (20 C.F.R. § 416.920(c)). AR 20-23.

Here, Plaintiff argues that the ALJ's finding of no severe impairment cannot withstand scrutiny because it is not supported by substantial evidence, and is the result of legal error.

Moreover, Plaintiff argues that the ALJ failed to comply with Regulations and rules governing the evaluation of mental impairments. Additionally, Plaintiff contends that the ALJ improperly rejected the opinions of Drs. Lessenger, Dozier and Garcia without articulating his reasons for doing so. Plaintiff further alleges that the ALJ disregarded favorable lay witness testimony as to Plaintiff's symptoms, and improperly dismissed Plaintiff's testimony and allegations of pain. (Doc. 16 at 6-19.)

## DISCUSSION

### Step Two Findings

Plaintiff argues that the ALJ failed to find her medically determinable impairments to be severe at step two of the sequential evaluation process, and that he further erred by not considering the cumulative effect of her multiple impairments. (Doc. 16 at 8-14.)

At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that does not significantly limit the claimant's physical and mental ability to do basic work activities. An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508, 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.  An overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  The ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B).  The combined effect

1   "shall be considered throughout the disability determination process." *Id*.  Further, when a

2   claimant suffers from multiple impairments, the Commissioner must consider their combined

3   effect without regard to whether any such impairment, if considered separately, would be of

4   sufficient medical severity, in determining whether the claimant is disabled. *Gregory v. Bowen*,

5   844 F.2d 664, 666 (9th Cir.1988); *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987). The

6   adjudicator's role at step two is further explained by Social Security Ruling ("SSR") 85-28:

7       A determination that an impairment(s) is not severe requires a careful evaluation of the
        medical findings which describe the impairment(s) and an informed judgment about its
8       (their) limiting effects on the individual's physical and mental ability(ies) to perform basic
        work activities; thus, an assessment of function is inherent in the medical evaluation
9       process itself. At the second step of sequential evaluation, then, medical evidence alone is
        evaluated in order to assess the effects of the impairment(s) on ability to do basic work
10      activities.

11      The ALJ identified that Plaintiff had the following medically determinable

12  impairments: diabetes - non-insulin dependent; headaches; and asthma. AR 20. Nonetheless, the

13  ALJ found none of the impairments to be severe. *Id*. He reasoned as follows:

14      Ms. See has a history of sporadic emergency room treatment for acute headaches,
        abdominal pain, and asthma. Workups have been negative and examinations
15      generally benign, with Ms. See merely being treated and released. Her CT scan
        was normal, and there is no evidence of end organ damage or neurological
16      compromise. No doctor has diagnosed her physical signs or symptoms as related
        to a pain or somatoform disorder. A consultative examining psychologist merely
17      noted depression and PTSD, found Ms See able to respond appropriately to usual
        work situations, and noted she could not determine the true nature or severity of
18      Ms. See's impairments or related limitation, secondary to Ms. See's lack of
        cooperation and symptom magnification. Neither did the consulting psychologist
19      render an opinion about physical signs, symptoms, or limitations based upon Ms.
        See's depression or PTSD. Further, while the consultative examining internist
20      limited Ms. See to medium work, Ms. See's effort was marginal, her examination
        benign, and the state agency found no evidence of any severe impairments.
21      Similarly, the San Joaquin Valley Family Medical Clinic progress records merely
        reflect simple conservative care and generally unremarkable examinations.
22      Further, Ms. See had four normal spirometry readings, and there is no evidence of
        psychiatric limitations. Finally, there is no objective evidence of a knee problem.

23

24  AR 20-22, internal citations omitted.

25      Here, although the ALJ found that Plaintiff had the medically determinable impairments

26  of diabetes - non-insulin dependent, headaches, and asthma, he found none of them to be severe.

27  The ALJ noted the "sporadic emergency room treatment" for acute headaches, abdominal

28  pain, and asthma, and discussed medical records evidencing "simple conservative care" and

8

1   "generally unremarkable examinations." AR 22. The ALJ also considered the negative workups

2   and the generally benign examinations, resulting in Plaintiff merely being treated and released.

3   *Id*. He noted "no doctor has diagnosed her physical signs or symptoms as related to a pain or

4   somatoform disorder." AR 22. Furthermore, Plaintiff's CT scan was normal and there was no

5   evidence indicating organ damage or neurological compromise. *Id*.

6       The ALJ also observed that "despite bringing an oxygen tank to the hearing, Ms. See has

7   had four normal spirometry readings." *Id*. Finally, the ALJ noted that Plaintiff's allegations of

8   debilitating knee pain were not supported by the objective evidence. *Id*. Therefore, the ALJ

9   considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted

10  as consistent with the objective medical evidence and the other evidence.  20 C.F.R. § 416.929;

11  SSR 96-2p, 96-5, 96-6p & 06-3p.  Simply put, Plaintiff has not proven the existence of a physical

12  or mental impairment by providing medical evidence in support thereof.  20 C.F.R. §§ 404.1508,

13  416.908.

14      Plaintiff contends that when a claimant suffers from multiple impairments, the

15  Commissioner must consider their combined effect without regard to whether any such

16  impairment, if considered separately, would be of sufficient medical severity, in determining

17  whether the claimant is disabled (*Gregory v. Bowen*, 844 F.2d at 666; *Sprague v. Bowen*, 812

18  F.2d at 1231) and the ALJ failed to do so.

19      While the ALJ noted that Plaintiff has multiple medically determinable impairments, he

20  nevertheless concluded that the medical record evidence and the testimonial evidence did not

21  reflect that the cumulative impact of these impairments was sufficient to establish medical

22  severity or to significantly impair Plaintiff's ability to carry out basic work-related activities.  AR

23  19-20.  Based on Plaintiff's history of conservative care, her benign examinations and sporadic

24  emergency room treatment, ALJ Larsen properly concluded that "the record did not reflect

25  ongoing symptoms, signs or findings consistent with Ms. See's allegations." AR 22. "The

26  claimant carried the initial burden of proving disability in steps one thorough four of the

27  analysis." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "The claimant bears the initial

28  burden of showing that he is disabled." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

1    Here, the ALJ identified medically determinable impairments of diabetes - non-insulin

2    dependent, headaches, and asthma, but concluded based on his careful examination of the

3    objective evidence, that the impairments were not disabling. AR 20. Therefore, the ALJ

4    justifiably ended his assessment at step two of the sequential evaluation. "If a claimant is found

5    to be disabled or not disabled at any step in the five-step sequential process for determining

6    disabilities established by the Social Security Administration, there is no need to consider

7    subsequent steps." *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2004). "If the claimant's

8    ailment does not pass step 2, . . . it is not disabling." *Id*. at 1006.  Hence, for the foregoing

9    reasons, the ALJ committed no legal error in finding lack of impairment at step two of the

10   sequential evaluation.

11        ***Mental Impairments***

12        Plaintiff argues that the ALJ committed reversible error by failing to comply with the

13   special psychiatric review technique for evaluating mental impairments. Hence, the ALJ had no

14   legal basis upon which to conclude that Plaintiff's mental impairments were not severe. In short,

15   Plaintiff contends that the ALJ failed to discuss Plaintiff's functioning in the Paragraph B

16   criteria, and this failure constitutes reversible error.

17        Evaluative steps used in assessing mental impairments, for purpose of Supplemental

18   Security Income benefits claim, are to be performed sequentially, and, if claimant fails to meet

19   any of the sequential hurdles, the claimant is not entitled to benefits and ALJ is not required to

20   complete the full analytic process. *Maier v. Commissioner of Social Sec. Admin*, 154 F.3d 913,

21   914 (9th Cir. 1998). A mental impairment must be established by medical evidence consisting of

22   signs, symptoms, and laboratory findings.  20 C.F.R. § 416.908.  Symptoms are a claimant's own

23   description of his or her impairment, and alone are not enough to establish a mental impairment;

24   signs include observable psychological abnormalities and must be medically demonstrable

25   phenomena; laboratory findings must be shown through medically acceptable laboratory

26   techniques.  20 C.F.R. § 416.913(a).

27        In evaluating the severity of mental impairments, a special procedure must be followed at

28   each level of administrative review.  *See* 20 C.F.R. §§ 202.1520a(a) & 416.920a(a).  The "special

technique" requires the adjudicator to determine whether the claimant has "a medically

determinable mental impairment, and if so, to 'rate the degree of functional limitation resulting

from the impairment' in four special functional areas - activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. §

404.1520a(b)(c).

> The relevant regulations establish a five step procedure to be employed in evaluating mental impairments. The procedure requires the evaluator to: (1) determine whether a mental impairment exists by recording pertinent symptoms and limitations; (2) determine whether "certain medical findings which have been found especially relevant to the ability to work are present or absent;" (3) determine whether the impairment is severe by rating the degree of functional loss resulting from the impairment; (4) determine whether the impairment, or a combination of impairments, meet or equal a mental disorder listed in 20 C.F.R. § 416.920a.

*Maier v. Commissioner of Social Sec. Admin*, 154 F.3d at 914.

A Psychiatric Review Technique Form ("PRTF") outlining the steps of this procedure

must be completed at the initial, reconsideration, ALJ hearing, and Appeals Council levels.  *See*

C.F.R. §§ 404.1520a(d), 416.920(d).  The ALJ is permitted, but not required, to call a medical

advisor to assist him in completing the PRTF. *See* 20 C.F.R. §§ 404.1520a(d)(1) &

416.920a(d)(1).  In order to satisfy section 404.1520a standards, the old regulations merely

required the ALJ to prepare and append a PRTF to each decision.  *Gutierrez v. Apfel*, 199 F.3d

1048, 1049-50 (9th Cir. 2000). The new regulations abolished this practice in favor of the ALJ

incorporating the pertinent findings and conclusions into his or her decisions. "Decisions must

now include a specific finding in each of the four functional areas the Commissioner uses to

evaluate the severity of a mental impairment."  20 C.F.R. § 404.1520a(e)(2)(2003).

With regard to Plaintiff's allegations of mental impairment, ALJ Larsen found that

> a consultative examining psychologist merely noted depression and PTSD, found Ms. See able to respond appropriately to usual work situations, and noted she could not determine the true nature or severity of Ms. See's impairments or related limitations, secondary to Ms. See's lack of cooperation and symptom magnification.

AR 22.  The ALJ also stated that "the consultative examining psychologist reported Ms. See was

uncooperative and exaggerated her condition. Nor has any treating physician opined

psychiatrically based limitations."  AR 22-23.

Plaintiff argues that the ALJ did not specifically discuss Plaintiff's functioning in the Paragraph B criteria as required by Title 20 of the Code of Federal Regulations section 416.920a, and did not rate her functioning in the Paragraph B criteria as required by the above regulation. The new amendment to section 404.1520a no longer requires that the PRTF be appended to the ALJ's decision, rather, mere incorporation of its contents in the decision will suffice.

Here, the ALJ commented on Dr. Lessenger's findings, and explicitly referenced Exhibit 3F, i.e., the psychological evaluation report compiled by Dr. Lessenger in which the doctor states:

> The client reported she is depressed, sometimes all day and sometimes half the day. She has occasional thoughts of suicide but no attempts. She has frequent "scary and noisy" nightmares and flashbacks about the war. She has heart palpitations several times per day, even when using the inhaler . . . she hears voices when she sleeps. The results of this evaluation reveal a forty-year-old female who reports symptoms of PTSD resulting from her early life in a war-torn country.

AR 211-214.

With regard to functional limitations, Dr. Lessenger made the following observations: (1) restrictions on daily activities: none; (2) difficulties in maintaining social functioning: Plaintiff reportedly limits social interaction to family members; (3) difficulties of concentration, persistence, and pace: moves slowly, and easily gives up and claims inability to see; (4) repeated episodes of emotional deterioration in work-like situations: no work history details. AR 214.

Although the decision did not specifically document the ALJ's application of the "special technique," the decision nevertheless clearly alludes to Exhibit 3F, the psychological evaluation report in which Dr. Lessenger expressly documented her findings with regard to each of the functional areas, as required under section 404.1520a. AR 211-214. "Amendments to §1520a since *Gutierrez* have given the ALJ greater discretion in deciding how best to publish them mandated findings, but even under the amended verison, the regulation requires the ALJ to follow the special technique and to 'document application of the technique in the decision.'" *Selassie v. Barnhart*, 2006 WL 2990105 (9th Cir. Oct. 17, 2006). Here again, the ALJ referenced the psychological evaluation report in his decision and therefore did incorporate "pertinent findings and conclusions" suggesting that he had properly followed these procedures. *Dykstra v.*

1   *Barnhart*, 2004 WL 504557 (9th Cir. Mar. 15, 2004).  ALJ Larsen's decision adequately

2   reflected specific findings made in each of the four functional areas the Commissioner employs

3   to evaluate the severity of a mental impairment, and therefore, the ALJ properly concluded that

4   Plaintiff's mental impairments were not severe.

5          In sum, for the reasons given above, no error occurred and the ALJ's findings are

6   supported by substantial evidence.

7                    ***Evaluation of the Medical Opinions***

8          Plaintiff argues that the ALJ improperly rejected the opinions of Drs. Lessenger, Dozier,

9   and Garcia without articulating his reasons for doing so. (Doc. 16 at 14.) More specifically,

10  Plaintiff contends that the ALJ improperly dismissed the opinion of Dr. Lessenger on the grounds

11  that she failed to render an opinion about physical signs, symptoms, or limitations based upon

12  Plaintiff's depression or PTSD. With regard to Dr. Dozier, Plaintiff argues that the ALJ mis-

13  characterized the findings in the record. Finally, Plaintiff asserts that there are no internal

14  contradictions in Dr. Garcia's reports, contrary to the ALJ's determination that his findings were

15  incongruous and ambiguous. Plaintiff contends that the ALJ had a duty to conduct an appropriate

16  inquiry to resolve the alleged ambiguity.  (Doc. 16 at 15-17.)  Defendant asserts no error occurred

17  and the ALJ properly assessed the relevant medical opinions.

18         Cases in the Ninth Circuit distinguish among the opinions of three types of physicians:

19  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

20  claimant (examining physicians); and (3) those who neither examine nor treat the claimant

21  (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a

22  treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*,

23  853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not

24  contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.

25  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is

26  contradicted by another doctor, the Commissioner may not reject this opinion without providing

27  "specific and legitimate reasons" supported by substantial evidence in the record for so doing.

28  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

1    The opinion of an examining physician is, in turn, entitled to greater weight than the

2    opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

3    *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating

4    physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

5    uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion

6    of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

7    can only be rejected for specific and legitimate reasons that are supported by substantial evidence

8    in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

9    The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

10   that justifies the rejection of the opinion of either an examining physician or a treating physician.

11   *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can

12   reject the opinion of a treating or examining physician, based in part on the testimony of a

13   nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.

14   1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example,

15   in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician,

16   "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of

17   Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an

18   abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test

19   results, on contrary reports from examining physicians, and on testimony from the claimant that

20   conflicted with her treating physician's opinion. *Id*. at 751-52.

21   The relevant medical evidence and physicians' opinions are summarized below.

22                    **Dr. Leslie Lessenger, Ph.D.**

23   Licensed psychologist Leslie H. Lessenger performed a psychological evaluation of

24   Plaintiff on May 17, 2005, and issued a report thereafter. AR 211-214.

25   Plaintiff reported to Dr. Lessenger that she has a poor memory and has trouble walking.

26   She has pain in both knees; the pain started about two to three years ago. AR 211. She does not

27   know the cause. She "'can't do anything'" because she forgets easily. She even forgets to turn

28   the stove off or on. This has been a problem for the past year and is worsening. *Id*

Dr. Lessenger reviewed medical records from San Joaquin Valley Family Medical Clinic for 2003 through 2005 which showed visits for asthma, diabetes, obesity, back, foot and knee pain, anxiety and depression, headaches, tennis elbow, dizziness, difficulty sleeping, and sinusitis. AR 212. Plaintiff reported she has headaches, diabetes, asthma, and knee pain. She suffered a head injury from a fall, but cannot remember at what age. She had two seizures while living in Visalia, but the dates are unknown. *Id.*

Plaintiff reported she was seen at Visalia Mental Health in the past because of difficulty sleeping. She has not been hospitalized. AR 212. Plaintiff reported that she "'doesn't do anything'" around the house. She can cook when she feels good, but does not do dishes, laundry, clean, drive, take the bus, or work in the yard. *Id.* She usually dresses herself, but her daughter helps her bathe. She enjoys visits from her grandchildren and friends, but she does not go out. *Id.*

Plaintiff stated that she was born in Laos and came to the Untied States after her marriage. AR 212. She has bad memories of the war in Laos in which she lost her brothers. She never received any education. She worked for two to three years packaging socks. She last worked in 2002. Plaintiff reported she is depressed, sometimes all day and sometimes half the day. She has occasional thoughts of suicide, but no attempts. AR 212. She has constant "'scary and noisy'" nightmares and flashbacks about the war. She has heart palpitations several times a day, even when using the inhaler. *Id.* She stays awake because she is afraid to dream. She hears voices in her sleep and feels "tightness of breathing" when she eats. *Id.*

With regard to the mental status examination, Dr. Lessenger reports that Plaintiff was dressed casually and hygiene was adequate. AR 212. She walked with a slight limp. Plaintiff's eye contact was poor with both the evaluator and the interpreter. She frowned throughout the interview, and appeared irritable and depressed. *Id.* Plaintiff spoke fluently to the interpreter. She complained that she could not see the Bender signs, but when given the option to return with her glasses, Plaintiff replied that "it would not make a difference." *Id.* Several times during the testing Plaintiff said she could not complete the task, and continued only with urging. Her motivation and effort were questionable. *Id.*

1    Dr. Lessenger's diagnostic impression includes PTSD, asthma, diabetes, back and knee

2 pain, and headaches. AR 213. The doctor recorded a GAF[3] score of 60. Dr. Lessenger's summary

3 and conclusions read as follows: "The results of this evaluation reveal a forty-year-old female

4 who reports symptoms of PTSD resulting from her early life in a war-torn country. She exhibits

5 depression and irritability," and "[i]t is difficult to assess her current cognitive functioning, as she

6 likely exaggerated memory and cognitive deficits." AR 213-214.

7    With regard to Plaintiff's restriction of daily activities, Dr. Lessenger found no restriction

8 was necessary.  With regard to difficulties in maintaining social functioning, the doctor noted

9 only that Plaintiff reported that she limits social interaction to family members.  In the category

10 of difficulties in concentration, persistence and pace, Dr. Lessenger noted that Plaintiff moves

11 slowly, gives up easily, and claims inability to see.  Owing to the absence of any work history

12 details, Dr. Lessenger was unable to assess Plaintiff's potential limitations in the area of repeated

13 episodes of emotional deterioration in work-like situations.  AR 214.

14    With regard to Plaintiff's ability to understand, carry out, and remember simple

15 instructions, or to deal with changes in a routine work setting, Dr. Lessenger was unable to make

16 a determination since Plaintiff's "motivation was questionable." AR 214.  Dr. Lessenger also

17 commented that Plaintiff is unlikely to function adequately in a work environment due to

18 depression.  *Id*.  The doctor found no limitations relating to Plaintiff's ability to respond

19 appropriately to usual work situations. She also noted that it was likely that Plaintiff's physical

20 complaints were at least in part a manifestation of depression and PTSD.  *Id*.  Dr. Lessenger also

21 opined that if benefits were granted, Plaintiff would not be capable of administering them in her

22 own best interest.  *Id*.

23

24

25

26    [3]The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's
overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental
27 Disorders* 30 (4th ed. 2000) ("DSM IV"). A GAF between 51 and 60 indicates "[m]oderate symptoms (e.g. flat
affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school
28 functioning (e.g. few friends, conflicts with peers or co-workers). DSM-IV at 34.

1       **Emanuel Dozier, M.D.**

2               Dr. Dozier conducted a comprehensive internal medicine evaluation on May 21, 2005.

3       The doctor noted that Plaintiff presented with the following complaints: benign positional

4       vertigo, chronic low back pain, chronic headaches, arthritis and diabetes.  AR 215.  Dr.  Dozier

5       reported that Plaintiff had a three-year history of chronic daily headaches, generally in the frontal

6       region radiating towards the back of the head and the neck, and lasting six to eight hours.  The

7       pain was equivalent to an eight on a ten-point scale, for which medication provided very little

8       relief.  *Id*.  Plaintiff stated that she visits the emergency room for pain shots when the headaches

9       are more severe.  She has visual blurring when the headaches occur. She also has photo and

10      phono phobia, and nausea without vomiting.  AR 216.  Plaintiff's headaches are sometimes

11      accompanied by dizziness, which affects her ability to balance. These bouts occur as frequently

12      as five to six times a week and last for four to six hours each.  *Id*.  Plaintiff also reports lower

13      back pain, allegedly the result of a lifting injury. The back pain strikes about four times a week

14      and can last for up to twelve hours. The pain is equivalent to an eight on a ten-point scale. *Id*.  At

15      such times, Plaintiff will often rest in bed to alleviate her symptoms.  She claims the pain is

16      aggravated by standing more than three to five minutes, walking more than seventy-five feet, and

17      sitting more than ten minutes, or lifting more than one gallon of milk.  AR 216.

18              Dr. Dozier reported that Plaintiff was alert and oriented.  He observed her walking down

19      the hall and noted no "signs of pain, ataxia, or shortness of breath."  AR 216.  Plaintiff's gait was

20      normal and she was able to sit without discomfort, and was also able to transfer on and off the

21      examination table without assistance.  AR 216-217.

22              With regard to Plaintiff's coordination, station and gait, Dr. Dozier recorded normal test

23      results for the finger-to-nose test and Plaintiff's gait.  Romberg was absent.  Plaintiff had some

24      difficulty but was able to perform heel-to-knee testing.  AR 218.  She does not use any assistive

25      devices.  AR 218.  Dr. Dozier reported motor strength was 5/5 in the upper and lower extremities

26      bilaterally, and grip strength was 5/5 bilaterally.  However, the doctor noted that "the claimant

27      [put forth] only marginal effort."  AR 219.

28

1    Dr. Dozier's diagnostic impression included mild degenerative arthritis, Type 2 diabetes

2    with diabetic retinopathy, chronic mechanical low back pain, benign positional vertigo, and

3    chronic recurrent non-neurologic headache.  AR 219.

4    Based on his evaluation of Plaintiff, Dr. Dozier made the following functional

5    assessment:

6       the claimant would have postural restrictions on frequent bending, stooping,
        crouching, pushing, and pulling.  She would have no manipulation restrictions.
7       She would have no special sense restrictions.  Environmental restrictions would
        be on climbing on ladders, working on incline planes, working on scaffolds and
8       overhangs.  She would be able to lift and carry occasionally 50 pounds and
        frequently 25 pounds.  She would be able to stand, walk, and sit for six hours.
9

10   AR 219.

11   **Raynado Garcia, M.D.**

12   In a March 14, 2007, questionnaire that appears to have been prepared by counsel for

13   Plaintiff, Plaintiff's treating physician opined that Plaintiff could sit six to eight hours at one

14   time, without rest or support.  AR 281.  He believed that Plaintiff could stand and/or walk six to

15   eight hours at one time, without rest or support.  However, the doctor reported that Plaintiff must

16   lie down or elevate her legs for up to three to four hours in an eight-hour day.  AR 281.  Dr.

17   Garcia also identified arthritis, diabetes and asthma as Plaintiff's primary impairments.  *Id*.

18   When asked "do you feel the medical problems for which you have treated Ms. See preclude her

19   from performing any full-time work at any exertional level, including the sedentary level?," the

20   doctor responded "yes."  AR 281.

21   **ALJ's Related Findings**

22   ALJ Larsen made the following findings regarding the relevant medical opinions:

23   Ms. See has a history of sporadic emergency room treatment for acute headaches,
     abdominal pain and asthma. Workups have been negative and examination
24   generally benign, with Ms. See merely being treated and released. No doctor has
     diagnosed her physical signs or symptoms as related to a pain or somatoform
25   disorder. A consultative examining psychologist merely noted depression and
     PTSD, found Ms. See able to respond appropriately to usual work situations, and
26   noted she could not determine the true nature or severity of Ms. See's
     impairments or related limitations, secondary to Ms. See's lack of cooperation and
27   symptoms magnification. Neither did the consulting psychologist render an
     opinion about physical signs, symptoms, or limitations based upon Ms. See's
28   depression or PTSD. Further, while the consultative examining internist limited

1   Ms. See to medium work, Ms. See's effort was marginal, her examination benign,
    and the state agency found no evidence of any severe impairments. Similarly, San
2   Joaquin Valley Family Medical Clinic progress records merely reflect simple
    conservative care and generally unremarkable examinations.
3           While Dr. Garcia, a treating physician, opines on disabling limitations on a
    standard form supplied by counsel, his opinions are not supported by treating
4   records reflecting concomitant sustained or clinical or laboratory pathology. In
    fact, his report is ambiguous, and the opined hours inconsistent. For example, Dr.
5   Garcia suggests Ms. See can sit, stand, or walk for 6 to 8 hours at one time, but
    only 6 hours per day. He sets no lifting limitations, but says Ms. See cannot
6   perform sedentary work. He cites no symptoms, signs, or laboratory findings to
    justify his opinion that Ms. See must lie down or elevate her legs for 3 to 4 hours
7   per day. Further, he imposes limitations since 2002, which overreaches in time. In
    sum, the record is without reports of ongoing symptoms, signs, or findings
8   consistent with Dr. Garcia's opinion. Indeed, the opinion is based upon physical
    impairments, which have been treated conservatively, are under control,
9   experience only sporadic acute exacerbation, and are not associated with sustained
    objective pathology. Accordingly, I give Dr. Garcia's opinion little weight.
10          Nor is there objective evidence of a knee problem. In addition, the
    consultative examining psychologist reported Ms. See was uncooperative and
11  exaggerated her condition. The consultative examining internist also noted
    marginal effort. The record does not reflect ongoing symptoms, signs, or findings
12  consistent with Ms. See's allegation; rather, she merely has a history of
    conservative care, with generally normal examinations. Moreover, her CT scan
13  was normal, and there is no evidence of end organ damage or neurological
    compromise. Nor has any treating physician opined psychiatrically - based
14  limitations.

15  AR 22-23, internal citations omitted.

16                          **Analysis**

17          As an examining psychologist, ALJ Larsen was required to provide specific and

18  legitimate reasons for rejecting Dr. Lessenger's opinion. *Andrews v. Shalala*, 53 F.3d at 1043.

19  Here, the ALJ indicated specific and legitimate reasons for not adopting the opinion.  Notably

20  too, Plaintiff is reminded that an ALJ may accept all, some, or none of a physician's opinion.

21  *Magallanes v. Bowen*, 881 F.2d at 753-754.

22          First, ALJ Larsen specifically noted that the doctor's opinion was not supported by

23  objective medical evidence.  A lack of supporting clinical findings is a valid reason for rejecting

24  a physician's opinion.  *Cf. Magallanes v. Bowen*, 881 F.2d at 751.

25          Further, ALJ Larsen noted that Dr. Lessenger's report indicates that Plaintiff was less

26  than cooperative and exaggerated her condition.  A poor effort or lack of cooperation during an

27  examination is a proper reason to omit or disregard certain findings.  *See, e.g., Bray v. Comm'r of*

28  *Soc. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ reasonably discounted physician

                                    19

1  opinion based on claimant's less than credible statements); *Tonapeytan v. Halter*, 242 F.3d at

2  1149 (holding that when the record supports the ALJ's discounting of the claimant's credibility,

3  the ALJ is free to disregard a doctor's opinion premised on the claimant's subjective complaints).

4    With regard to the opinion of examining physician Dr. Dozier, the ALJ provided specific

5  and legitimate reasons for discounting the doctor's opinion: Plaintiff's efforts were marginal, the

6  examination results were generally benign and the state agency physician found no severe

7  impairment.  AR 22.  When the ALJ rejects the opinion of an examining physician in reliance on

8  the non-examining physician, "reports of the nonexamining advisor need not be discounted and

9  may serve as substantial evidence when they are supported by other evidence in the record and

10  are consistent with it."  *Andrews v. Shalala*, 53 F.3d at 1041 (9th Cir. 1995); *Saelee v. Chater*, 94

11  F. 3d 520, 522 (9th Cir. 1996).  As noted by ALJ Larsen, the record here establishes that Plaintiff

12  has received "simple, conservative care and generally unremarkable examinations."  AR 22.

13    As a treating physician, Dr. Raynado Garcia's opinion is typically afforded greater

14  weight.  *Winans v. Bowen*, 853 F.2d at 647.  However, it is contradicted by the opinions of other

15  physicians, and thus, the ALJ was required to give specific and legitimate reason for discounting

16  Dr. Garcia's opinion.  *Murray v. Heckler*, 722 F.2d at 502.  Here, ALJ Larsen identified the

17  following reasons: (1) the opinion supplied on a standard form, (2) the record does not support

18  the opinion, and (3) the report was ambiguous and internally inconsistent.  First, an ALJ may

19  discount a treating physician's opinion where, *inter alia*, it is in the form of a checklist.  *See*

20  *Batson v. Commissioner, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004);  *Magallenes v.*

21  *Bowen*, 881 F.2d at 751 (a brief and conclusionary form opinion lacking supporting clinical

22  findings is a legitimate reason to reject a treating physician's conclusion).  Second, and as

23  indicated previously, where an opinion is not supported by other evidence in the record, this is a

24  specific and legitimate reason to discount a physician's opinion.  *Magallanes v. Bowen*, 881 F.2d

25  at 751.  The need for conservative treatment suggests a lower level of pain and functional

26  limitation.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  Finally, Dr. Garcia's

27  opinion itself was internally inconsistent with regard to the hours Plaintiff was capable of sitting,

28  standing and walking.

1    In conclusion, the Court notes this record does not support Plaintiff's position.  There is a

2    distinction between symptoms and signs, "symptoms . . . are an individual's own perception or

3    description of the impact of his or her physical or mental impairment(s) . . . [Yet] when any of

4    these manifestations is an anatomical, physiological, or psychological abnormality that can be

5    shown by medically accepted clinical diagnostic techniques, it represent a medical 'sign' rather

6    than a 'symptom.'" SSR 96-4p; *see also* 20 C.F.R. §§ 404.1528(a)-(b) & 416.928(a)-(b).  This

7    record is replete with Plaintiff's reported symptoms; it is lacking in medical signs.

8            ***Plaintiff's Allegations of Pain***

9            Plaintiff contends that the ALJ erred in failing to properly evaluate Plaintiff's allegations

10   of pain.  (Doc. 16 at 20-22.)

11           The ALJ is required to make specific findings assessing the credibility of a plaintiff's

12   subjective complaints. *Ceguerra v. Secretary of HHS*, 933 F.2d 735, 738 (9th Cir. 1991). In

13   rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and

14   what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th

15   Cir. 1996), quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th

16   Cir. 1988). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

17   severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

18   with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

19   discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

20           "Despite the inability to measure and describe it, pain can have real and severe

21   debilitating effects; it is,  without a doubt, capable of entirely precluding a claimant from

22   working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling pain

23   even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to

24   disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision."

25   *Id*., citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  The findings must

26   convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602.

27   However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds

28

1   true even where the claimant introduces medical evidence showing that he has an ailment

2   reasonably expected to produce some pain." *Id*. at 603.

3        Once a claimant produces medical evidence of an underlying impairment likely to cause

4   the alleged pain, the ALJ may not discredit the allegations of the severity of the pain solely

5   because the evidence does not support plaintiff's statements. *Lester*, 81 F.3d at 834, citing

6   *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). "The ALJ may consider at least

7   the following factors when weighing the claimant's credibility: [claimant's] reputation for

8   truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]

9   conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

10  parties concerning the nature, severity, and effect of the symptoms of which [claimant]

11  complains." *Id*. (citing *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's

12  credibility finding is supported by substantial evidence in the record, we may not engage in

13  second guessing." *Id*.

14       The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec.

15  Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Additionally, the ALJ may make inferences "logically

16  flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *see Drouin v.

17  Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (ALJ's observations during the hearing, along

18  with other evidence, constitutes substantial evidence); *Morgan v. Commissioner of Social Sec.

19  Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with

20  medication was valid consideration in assessing claimant's  credibility).

21       If a claimant is able to spend a substantial part of his day engaged in pursuits involving

22  the performance of physical functions that are transferable to a work setting, a specific finding as

23  to this fact may be sufficient to discredit a claimant's allegations.  *Morgan v. Commissioner of

24  Social Sec. Admin.*, 169 F.3d at 600.  The ALJ must make "specific findings relating to [the

25  daily] activities" and their transferability to conclude that a claimant's daily activities warrant an

26  adverse credibility determination.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

27       Here, the ALJ stated: "After considering the evidence of record, I find Ms. See's

28  medically - determinable impairments can reasonably be expected to produce her alleged

1   symptoms, but her statements about the intensity, persistence, and limiting effects of those

2   symptoms are not entirely credible." AR 22.  The ALJ noted Plaintiff's "history of sporadic

3   emergency treatment," her negative work ups and generally benign examinations. He specifically

4   commented on the fact that a consultative examining psychologist could not determine the true

5   nature or severity of Plaintiff's impairments or related limitations, owing to her lack of

6   cooperation or marginal effort and symptom magnification. AR 22.  The ALJ also determined

7   that despite bringing an oxygen tank to the hearing, Plaintiff has had four normal spirometry

8   readings.  AR 22.  Additionally, the ALJ noted that the record did not reflect ongoing symptoms,

9   signs or findings consistent with Plaintiff's allegations.  Moreover, Plaintiff's CT scan was

10  normal, and there was no evidence of end organ damage or neurological compromise.  Lastly,

11  ALJ Larsen found it telling that Plaintiff's treating physicians did not determine she suffered

12  from "psychiatrically based limitations."  AR 23.

13          Hence, the ALJ made very specific findings in assessing the credibility of Plaintiff's

14  subjective complaints.  Not only did ALJ Larsen identify what testimony is not credible, he

15  identified evidence tending to undermine Plaintiff's complaints.  Additionally, the ALJ

16  referenced Exhibit 4F in his decision wherein Dr. Dozier observed that Plaintiff was alert and

17  oriented, showed no signs of pain, ataxia or shortness of breath, walked with a normal gait, sat

18  for the examination and interview without discomfort, and was able to transfer on and off the

19  examination table without assistance.  *See* AR 22; 216-217.

20          Without affirmative evidence showing that the claimant is malingering, the

21  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.

22  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).  Here, ALJ Larsen's

23  decision references Exhibit 3F wherein Dr. Lessenger states that Plaintiff  "frequently claimed

24  not to recognize either of the items presented in the trials. Her scores fall within chance, but are

25  well below the score of 45, suggesting likely malingering." AR 22, 213.  In the summary and

26  conclusions, Dr. Lessenger noted that it was "difficult to assess her current cognitive functioning,

27  as she likely exaggerated memory and cognitive deficits." AR 213- 214.  In any event, ALJ

28  Larsen clearly identified Plaintiff's reputation for truthfulness and inconsistencies in her

Case 1:09-cv-01751-GSA   Document 19   Filed 03/23/11   Page 24 of 25

testimony and the medical record as reasons to discredit her reported symptoms.  These findings are sufficiently specific to ensure the ALJ did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d at 958.  The ALJ is entitled to resolve questions of credibility and conflicts in the testimony. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

"If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing." *Light v. Soc. Sec. Admin.*, 119 F.3d at 792.  Here, ALJ Larsen's credibility determination was supported by substantial evidence, and was sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d at 958.

### *Lay Witness Testimony*

Plaintiff argues that the ALJ improperly disregarded lay witness testimony favorable to Plaintiff from her daughter, Nalor.  Additionally, argues Plaintiff, the ALJ erred by not considering a function report prepared by another daughter, Saeng.  Plaintiff contends that because the ALJ failed to address this lay witness testimony, his omission constitutes reversible error.  (Doc. 16 at 19.)

Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness." *Id*.  "Lay witness testimony may be introduced to show severity of the impairment[s] and how it affects claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).  The ALJ need not discuss lay witness testimony that pertains to whether or not an impairment exists. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence.  20 C.F.R. § 404.1513(a).  However, once an impairment has been established by medical evidence, the extent of the diagnosed impairment may be testified to by the lay witness. 20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d at 1232.

"Where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, both Naylor's testimony and Saeng's function report contain statements that are not borne out by the medical evidence.  Despite Plaintiff's contentions to the contrary, she has not established any impairment to be a severe impairment.  ALJ Larsen was not required to specifically address the lay witness testimony here because the testimony would plainly have had no impact on his ultimate disability determination.  Therefore, because no reasonable ALJ would have reached a different disability determination, ALJ Larsen's failure to address the favorable lay witness testimony constitutes harmless error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Peng See.

IT IS SO ORDERED.

**Dated:   March 22, 2011**              _____**/s/ Gary S. Austin**_____
                                    UNITED STATES MAGISTRATE JUDGE