UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENG SEE,<br><br>           Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,[1] Commissioner of Social Security<br><br>           Defendant. | **1:09-cv-1751 GSA**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES UNDER EAJA IN PART**<br><br>**(Docs. 28 and 31)** |

## INTRODUCTION

Plaintiff filed a complaint challenging the denial of her supplemental security income payments on October 2, 2009. (Doc. 1). On March 23, 2011, this Court affirmed the agency's decision and issued a judgment in Defendant's favor. (Docs. 19 and 20). On May 10, 2011, Plaintiff filed a notice of appeal. (Doc. 22). On December 13, 2012, the Ninth Circuit issued its decision, reversing, and remanding this matter to the Commissioner for further proceedings. (Docs. 26 and 27).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

Plaintiff now seeks attorney's fees pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412(d)) ("EAJA") in the amount of $20,907.28, and $22.10 in costs.[2]  The motion includes requests for fees from attoney Sengthiene Bosavanh and her colleague, Ralph Wilborn. Defendant opposes the motion on the basis that the government's position was substantially justified and that the requested fees are unreasonable.  Upon a review of the pleadings, the Court grants Plaintiff's motion in part.  Plaintiff shall be awarded attorneys' fees in the amount of $ 16,401.67 and $22.00 in costs.

## DISCUSSION

### A. *Substantial Justification*

#### *1. Legal Standard*

Pursuant to 28 U.S.C. § 2412(d)(1)(A), claimants who successfully challenge an agency decision in a civil action are entitled to reasonable fees and expenses. 28 U.S.C. § 2412(d)(1)(A) provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Thus, when a claimant wins a remand based on an incorrect decision by the Commissioner, attorneys' fees are to be awarded unless the Commissioner shows that she was

---

[2] In Plaintiff's motion, counsel initially requested $19,697.22 for 110.05 hours of attorney services.  In the reply, Plaintiff reduced the amount of fees requested by one hour in 2010 for a total amount of $19,524.98 for 109.05 hours. However, counsel also requested an additional $1,382.40 (7.5 hours at a rate of $184.32) for filing the reply to the Motion for Attorney's fees.  Therefore, the $20,907.38 reflects the total amount requested in Plaintiff's initial motion and the reply.

"substantially justified" in her position, or that special circumstances make an award unjust. *Meier v. Colvin*, 727 F. 3d 867, 869-870 (9th Cir. 2013); see also, *Lewis v. Barnhart*, 281 F. 3d 1081, 1083 (9th Cir. 2002). "It is the government's burden to show that its position was substantially justified." *Meier*, 727 F. 3d at 870 (citing *Gutierrez v. Barnhart*, 274 F. 3d 1255, 1258 (9th Cir. 2001). "Substantial justification means 'justified in substance or in the main - that is, justified to a degree that could satisfy a reasonable person.'" *Id*. (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "Put differently, the position of the United States must have a 'reasonable basis in both law and fact.'" *Id.* citing *Pierce v. Underwood*, 487 U.S. 565. The position of the United States includes both the government's litigation position and the underlying agency action giving rise to the civil action. *Id*. citing *Hardisty v. Astrue*, 592 F. 3d 1072, 1077 (9th Cir. 2001). If the government's underlying agency action was not substantially justified, it is not necessary to address whether the government's litigation position was justified. *Id*. at 872.

      *2.   Relevant Background*

Plaintiff argued five issues in this case: 1) that the ALJ erred at step two when he failed to find that Plaintiff 's headaches, diabetic retinopathy, posttraumatic stress disorder ("PTSD"), depression, and right knee degenerative joint disease were not severe impairments, 2) that the ALJ committed reversible error by failing to comply with the special psychiatric technique for evaluating mental impairments,  3) the ALJ's rejection of the physician's opinions was improper, 4) the ALJ erred by failing to address lay witness testimony, and 5) that the ALJ improperly rejected Plaintiff's testimony and allegations.

This Court rejected all of Plaintiff's arguments.  Specifically, this Court held that the ALJ correctly found that Plaintiff's impairments listed above were not "severe" at step two, and that while the ALJ did not outline the "special psychiatric technique" in his decision, his reference to

Dr. Lessenger's opinion (the consultative physician examining Plaintiff's mental impairments) was sufficient to fulfill his duty to perform the evaluation. (Doc. 19 at 7-13). In addition, this Court found that the ALJ had adequately evaluated, and discounted, the opinions of Plaintiff's examining physicians, and that the ALJ reasonably determined that Plaintiff's subjective allegations of disability were not credible. (Doc. 19 at 13-24). Finally, this Court found that the ALJ was not required to address Plaintiff's daughter's lay witness statement because it was not supported by the medical evidence. (Doc. 19 at 24-25).

On appeal, the Ninth Circuit reversed and remanded. In particular, the Ninth Circuit found *inter alia*, that the ALJ's decision was not supported by substantial evidence because the ALJ failed to address Dr. Lessenger's diagnosis of PTSD and Depressive Disorder Not Otherwise Specified ("NOS"). (Doc. 26, pg. 2). By not finding a medically determinable mental impairment, the ALJ implicitly rejected those diagnoses without setting forth specific and legitimate reasons for doing so. Moreover, the ALJ not only mischaracterized Dr. Lessenger's report, but he also impermissibly focused on portions of the report that supported a finding of nondisability, and ignored those portions that would support a finding that Plaintiff was disabled. *Id*. (Doc. 26, pg. 3). The Court also concluded that the ALJ's statement that Dr. Lessenger did not render an opinion about signs, symptoms, and limitations based on Plaintiff's PTSD and depression was factually inaccurate. Therefore, this was not a legitimate reason supported by substantial evidence for rejecting the opinion. *Id*. The Ninth Circuit remanded the case to the ALJ for a proper evaluation of Dr. Lessenger's opinion, and also ordered that the psychiatric review technique be completed. On remand, the ALJ was ordered to proceed with the sequential steps of the disability process and evaluate Plaintiff's claims including assessing Plaintiff's credibility.

///

3. *The Government's Position Was Not Substantially Justified.*

Defendant argues that in contrast to the Ninth Circuit, this Court determined that the ALJ's decision was based on substantial evidence and that the ALJ properly discounted Dr. Lessenger's opinion. Defendant contends that because this Court and the Ninth Circuit came to different conclusions, that the Commissioner's position was reasonable and therefore was substantially justified.

First, under *Meier v. Colvin,* this Court must examine the underlying agency action (in this case the ALJ's decision), before evaluating the government's litigation position. *Meier*, 727 F.3d at 872. This Court acknowledges that the Ninth Circuit's ruling regarding the ALJ's decision is different than the one reached by the undersigned. The Commissioner's failure to prevail in a court does not raise a presumption that its position was not substantially justified. *Kali v. Brown*, 854 F. 2d 329, 332 (9th Cir. 1988). Similarly, the fact that one other court agreed or disagreed with the government does not establish whether a position was substantially justified. *Pierce*, 487 U.S. 522 at 569. However, a holding that the agency's decision of the case was unsupported by substantial evidence is "a strong indication" that the position of the United States was not substantially justified. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005). The *Thangaraja* court wrote: "Indeed, it will be only a 'decidedly unusual case' in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record," *Id.* citing *Al-Harbi v. INS,* 284 F.3d 1080, 1085 (9th Cir.2002).

Here, the Court has re-reviewed the record and finds that the ALJ's decision was not substantially justified. At issue in this case was whether Plaintiff had a medically determinable mental condition. When an individual applies for disability, an assessment of one's physical or mental impairment is necessary:

> If you are not doing substantial gainful activity, we always look
> first at your physical or mental impairment(s) to determine whether

you are disabled or blind. Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms (see § 416.927). (See § 416.928 for further information about what we mean by symptoms, signs, and laboratory findings.)

20 C.F.R. § 416.908

(b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

(c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R § 416.928

The evaluation of mental impairments is governed by 20 C.F.R. § 416.920a which provides as follows :

The steps outlined in §§ 416.920 and 416.924 apply to the evaluation of physical and mental impairments. In addition, when we evaluate the severity of mental impairments for adults (persons age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, we must follow a special technique at each level in the administrative review process. We describe this special technique in paragraphs (b) through (e) of this section …

(b) Use of the technique.

(1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). See § 416.908 for more information about what is needed to show a medically determinable impairment. If we determine that you have

> a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.
>
> (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

20 C.F.R. § 416.920a

Thus, when a mental impairment is at issue, a special technique must be followed. This procedure requires that once a medically determinable mental impairment is established, the ALJ must complete a psychiatric review technique form ("PRTF") to determine the severity of the impairment. The PRTF evaluates functional limitations in four areas including: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. If the degree of functional limitations in the first three functional areas is rated as "none" or "mild" and there are no episodes of decompensation, the impairment is generally considered not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1). The ALJ's written decision must incorporate the pertinent findings and conclusions based on the technique. SSR 96-8p, 1996 WL 374184; 20 C.F.R. § 416.920a(c)(3) and (e). *Gutierrez v. Apfel*, 199 F. 3d 1048, 1050 (9th Cir. 2000) *superseded by regulation as stated in Blackmon v. Astrue*, 719 F. Supp. 2d 80, 92 (D.D.C. 2010) (failure of the ALJ to complete and append the PRTF required reversal); *Keyser v. Commissioner of Social Security Admin.*, 648 F. 3d 721 (9th 2011) (When a claimant presents a colorable claim of mental impairment, the ALJ is required to complete an RPTF, append it to the decision, or incorporate its mode of analysis into the findings and conclusions) .

Here, Dr. Lessenger diagnosed Plaintiff with PTSD and Depressive Disorder NOS. AR 213. Although Dr. Lessenger found that Plaintiff showed signs of malingering which the ALJ

focused on (AR 22), the doctor also found a limitation that Plaintiff would be unlikely to function adequately in a work environment due to depression. AR 214. The ALJ improperly stated that this limited ability to function in a work environment was not a psychological symptom based on Plaintiff's depression or PTSD. AR 22. In reaching this conclusion, the Ninth Circuit correctly noted that "the ALJ impermissibly focused on portions of Dr. Lessenger's report that supported a finding of nondisability while ignoring those that would support a finding that See was disabled." (Doc. 26, pg. 2).

Circuit precedent is well-settled that "like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Here, the ALJ did not provide adequate reasons for rejecting Dr. Lessenger's opinion. (Doc. 26, pg. 2). As the Ninth Circuit noted, "… [B]y not finding See had a medically determinable impairment, [the ALJ] implicitly and erroneously rejected those diagnoses without setting forth specific and legitimate reasons for doing so." (Doc. 26, at pg. 2). Circuit precedent is clear that an ALJ must comply with the *Lester* standard when rejecting an examining physician's contradicted opinions.

Furthermore, once a medically determinable condition was established, the Commissioner is required to complete the special psychiatric technique to determine the severity of the impairment and any decision must specifically address those findings. 20 C.F.R. § 416.920a (e). The ALJ failed to do so in this case. Because the ALJ's disability determination was based on violations of clearly established precedent and regulations, the decision had no reasonable basis in law and fact and it is not substantially justified. Since the government's underlying agency action was not substantially justified, it is not necessary to address whether the government's litigation position was justified. *Meier*, 727 F.3d at 872.

///

### B. Reasonableness

A prevailing party under the EAJA is one who has gained by judgment or consent decree a material alteration of the legal relationship of the parties. *Perez–Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir.2002). Under the EAJA, attorney's fees must be reasonable. 28 U.S.C. § 2412(d)(1)(A); *Perez–Arellano*, 279 F.3d at 794. The amount of the fee must be determined based on the particular facts of the case. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In making this determination, courts should apply the "lodestar" method to determine what constitutes reasonable attorney's fees. *Hensley*, 461 U.S. at 433. To calculate the lodestar amount, the court multiplies "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The Court further explained that counsel for the prevailing party should exercise "billing judgment" to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" as a lawyer in private practice would do. *Hensley*, 461 U.S. at 434; see also *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.").

The court must provide a concise and clear explanation of the reasons for its attorney award calculation. *Hensley*, 461 U.S. at 433, 437; *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). A court has wide latitude in determining the number of hours reasonably expended and may reduce the hours if the time claimed is excessive, redundant, or otherwise unnecessary. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir.1988), *cert. denied*, 493 U.S. 1035 (1990). The court must generally give deference to a winning lawyer's professional judgment as to how much time was required to spend on a case. *Costa v. Commissioner of Soc. Sec. Admin.*, 690 F. 3d 1132 (9th Cir. 2012). However, the court has the obligation to exclude from the calculation any hours that were not reasonably expended on the litigation. *Spegon v.*

*Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir.1999).  " 'Hours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority.' " *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)).  The applicant bears the burden of demonstrating the reasonableness of the fee request. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

   1. *Hourly Rates*

Here, Plaintiff requests $172.24 per hour for work performed by counsel in 2009; $175.06 per hour for work performed by counsel in 2010; $180.59 for work performed by counsel in 2011; $184.32 for work performed by counsel in 2012; and $187.02 for work performed in 2013. These rates are the applicable statutory maximum hourly rates under EAJA for attorney work performed in those years, adjusted for increases in the cost of living.  *Thangaraja*, 428 F.3d at 876–77 (9th Cir. 2005), and Ninth Circuit Rule 39–1.6.  There has been no objection to these rates and the Court will apply them accordingly.  The issue in this case is whether the number of attorney hours expended is reasonable.

   2. *The Parties' Positions*

Plaintiff argues that the request for payment for fees is reasonable.  The Defendant argues that Plaintiff's request is excessive and that Plaintiff's counsel should be reduced by 66.98 hours and be reimbursed for a total amount of $7,401.05. Specifically, with regard to Ms. Bosavanh, Defendant contends: 1) she improperly bills in .1 hour increments thereby inflating the amount requested for tasks, 2) she inappropriately bills for clerical tasks, 3) she charges for Plaintiff's requests for extensions of to time to file briefs that are noncompensable, 4) she fails to outline with specificity the nature of various teleconferences with her client, and 5) her billing is excessive as she charges for services that are duplicative.  Defendant also argues that Mr. Wilborn : 1) excessively billed for writing the opening and reply briefs submitted to this Court,

and 2) the amount of time spent writing the appellate briefs was also excessive. Therefore, his fees should be reduced accordingly.

*3.     Ms. Bosavanh's Time*

As a preliminary matter, Ms. Bosavanh has a long history of submitting motions for attorneys' fees in this Court and has repeatedly requested compensation for certain activities. These activities include *inter alia*: billing in .1 hour increments for clerical/minimalistic tasks, charging for duplicative review of Mr. Wilborn's work, and requesting excessive amounts for the preparation of the EAJA application.  The undersigned, as well as many of the other Magistrate Judges in the Fresno division handling social security cases have advised Ms. Bosavanh that these practices are not acceptable. *Cathey v. Commissioner of Social Security*, 2013 WL 1694950 (E.D. Cal. No. 1:10-cv-1562) (April 18, 2013) (McAuliffe, B.); *Forsythe v. Astrue*, 2013 WL 1222032 (E.D. Cal. No. 1:10-cv-1515) (March 25, 2013) (Austin, G.); *Brumley v. Commissioner of Social Security*, 2013 WL 100249 (E.D. Cal. No. 1:11-cv-253) (Jan. 7, 2013) (Thurston, J); *Lopez v. Astrue*, 2012 WL 2052146 (E.D. Cal. No. 1:10-cv-1012) (June 6, 2012) (Austin, G.); *Downey v. Astrue*, 2012 WL 1205824, (E.D. Cal. No. 1:09-cv-812) (April 11, 2012) (Oberto, S.); *Stairs v. Astrue*, 2011 WL 2946177 (E.D. Cal. No. 1:10-00132) (July 21, 2011) (Beck, D.), aff'd *Stairs v. Comm. of Soc. Sec.*, 522 Fed. Appx. 385 (9th Cir. 2013); *VonBerckefeldt v. Astrue*, 2011 WL 2746290 (E.D. Cal. (No. 1:09–cv–01927) (July 14, 2011) (Beck, D); *Roberts v. Astrue*, 2011 WL 2746715 (E.D. Cal. No. 1:09–cv–01581) (July 13, 2011) (Beck, D); *Fontana v. Astue*, 2011 WL 2946179 (E.D. Cal. No. 1:09-cv-0932) (July 21, 2011) (Beck, D); *Reyna v. Astrue*, 2011 WL 6100609 (E.D. Cal. No. 1:09-cv-00719) (Dec. 6, 2011) (Snyder, S.), aff'd *Reyna v. Comm. of Soc. Sec.*, 548 Fed. Appx. 404 (9th Cir. 2013).

Ms. Bosavanh has continually disregarded the rulings in these previous orders and *again* has submitted a billing sheet requesting payment for these services in the instant motion. Ms.

Bosavanh is put on notice that next time she files an EAJA application using this format and requesting these fees, she may face an Order to Show Cause Why Rule 11 Sanctions Should Not Be Imposed.  Submitting a bill that clearly contains inflated amounts for services is not acceptable.  Notwithstanding the above, the Court will address the request in this instance as follows :

### a)  Inflated Billing for Simple Tasks

A large portion of the timesheet submitted to the Court by Ms. Bosavanh consists of simple "check off" tasks that should each take no more than a few seconds to accomplish.  These activities include : "reviewing" return receipts from Defendants (10/27/09-/10/30/09), "reviewing" consent to magistrate judge by OGC attorney (11/23/09) "reviewing" the notice of lodging the administrative transcript (2/10/09), "reviewing" a stipulation and order of the judge (3/22/10), "reviewing" a mediation order from the Ninth Circuit (05/24/11), "reviewing" an order from the Ninth Circuit that the case was not selected for mediation (6/16/11), and "reviewing" an order from Ninth Circuit Re: 7 days to mail 7 copies of briefs (8/19/11).  However, she claims 6 minutes of time (0.1 hours) for each of these minimalistic tasks, which when taken together has a multiplier effect and saddles the Commissioner with hundreds of dollars of unjustified fee payments.  An experienced attorney should be able to complete these tasks in a more timely fashion, especially since Ms. Bosavanh receives email notices of docket entries with the necessary hyperlink directly to the document for the district court activities.  Moreover, many of these tasks could be completed by a paralegal.  Ms. Bosavanh will not be compensated for these activities at this rate.

Additionally, Ms. Bosavanh has several billing entries for case management related activities, such as, filing the complaint and "reviewing" the civil cover sheet (.4 hours on 10/02/09), "reviewing" the summons and the scheduling order (.3 hours on 10/5/09), contacting

the government regarding difficulties with the transcript (.2 hours on 3/11/10), "reviewing" the transcript (1,0 hours on 3/14/10), telephoning the government about various issues ( a total of .3 hours on 3/20/10 and 3/22/10), and "reviewing" the draft of appeal documents (.3 hours on 05/10/11). These entries also appear to be inflated.  The existence of these inflated amounts causes the Court to question the validity of *all* of Ms. Bosavanh's entries.  The Court will reimburse Ms. Bosavanh for case management related activities, but not at these rates.  Accordingly, Ms. Bosavanh will be awarded 3.5 hours for case management related activities over the course of the entire case .[3]

                              b)   *Duplicative Billing for Reviewing Mr. Wilborn's Work*

      Ms. Bosavanh has also been advised that counsel fees should not be excessive or redundant, nor should it include unnecessary time that is attributable to the supervision or the correction of another attorney's work.  *Reyna v. Astrue*, 2011 WL 6100609, at *3 (E.D. Cal. Dec. 6, 2011) (09-cv-719 SMS) citing, *Hensley*, 461 U.S. at 434.  Despite being told that the government should not be forced to pay increased fees simply because she decided to employ another attorney to write the briefs in her cases, Ms. Bosavanh requests 8.1 hours for reviewing Mr. Wilborn's work in this case.[4]  *Forsythe v. Astrue*,  2013 WL 1222032 (E.D. Cal., Mar. 25, 2013). The Court acknowledges that some review of Mr. Wilborn's work is necessary since she is the attorney of record, but the extent of Ms. Bosavanh's review should be minimal as Mr. Wilborn has several more years of experience than Ms. Bosavanh, and was a former administrative law judge.  As such, Ms. Bosavanh will only be awarded a total of .5 hours for

---

[3] This includes time for managing the docket, assembling briefs for filing, communicating with the Commissioner regarding case management issues.  The 3.5 hours will be proportionally distributed over the appropriate years based on Ms. Bosavanh's reporting.

[4] This includes the following entries : 1) 4/26/10 – 1.0 hours (review of confidential letter brief); 5/21/10 - .2  hours (review of government's response to confidential letter brief); 8/4/10 - .9 hours (review opening brief); 9/9/10 - .5 hours (review government's opposition); 9/21/10 – 1.0 hour (review Plaintiff's reply brief); 5/10/11 - .3 hours (review draft of notice of appeal); 8/18/11 – 1.5 hours (review Ninth Circuit opening brief at Ninth Circuit); 8/25/11 - .3 (review Ninth Circuit opening brief); 1/17/12 – 1.0 (review Appellee's answering brief); 2/6-2/7/12 – 1.4 (review reply brief).

reviewing each of Mr. Wilborn's briefs for a total of 2.0 hours.

        *c)*      *Preparation of the EAJA Application*

Ms. Bosavanh's requests 2.5 hours for preparing the EAJA application. Preparing an itemized time sheet for an EAJA fee motion is not a clerical task as counsel must review the time records to make sure the time is properly billed to the client, ensure that time billed is accurate, and redact any privileged information. See *Fortes v. Astrue*, 2009 WL 3007735, *4 (S.D. Cal. 08-cv-317) (Sept. 17, 2009) (Moskowitz., B) (allowing 2.75 hours reviewing time records and logs to prepare a billing sheet in support of an EAJA motion). However, as noted by Judge Beck, a review of several of the other requests for attorney's fees filed by Plaintiff's counsel contains several similarities. *Stairs v. Astrue*, 2011 WL 2946177, at * 3. Moreover, this Court will not reimburse Ms. Bosavanh for completion of an EAJA application that includes impermissible entries. It is also noted that Mr. Wilborn billed 1.5 hours to prepare the draft of the EAJA application. Accordingly, Ms. Bosavanh therefore be allowed .5 hours for this task.

        *d)*      *Teleconferencing with the Client/Interpreter*

Ms. Bosavahn has requested a total of 2.7 hours for communicating with her client over the course of the case.[5] The Court is not persuaded by Defendant's arguments that Ms. Bosavanh's billing lacks specificity with regard to this category. The Court has examined these entries and the requests are reasonable. Accordingly, the Court will grant this request.

        e)      *Assessing the Merits the of Appeal at the District Court*

Ms. Bosavanh has requested 1.6 hours for activities related to ascertaining the merits of the appeal in the district court.[6] While some compensation is warranted for this activity, Mr.

---

[5] These entries include : 9/3/09 - .3 hours (call regarding Appeals Counsel denial); 9/26/09 - .3 hours (call to answer questions re: documents); 11/01/09 –.3 hours (call re: status of the case); 1/29/11 - .2 hours (call regarding status of case); 2/10/10 - .3 hours (status of the case); 3/14/10 - .1 (call re: status of the case); 3/28/11 - .4 hours (call re: appealing decision); 1/19/12 - .4 (call regarding status of the case); 12/14/12 - .4 hours (call re: result of the appeal).

[6] The Court has not included discussions with Plaintiff regarding the appeal in this section. Instead, this category includes : 8/4/09 - 1.0 hours (reviewing the Appeal's Council denial); 9/24/09 - .4 (Drafting a letter to client and

Wilborn also billed .5 hours for this task which is duplicative. Accordingly, Ms. Bosavanh will only be awarded 1.0 for determining whether the appeal in this court should be filed.

As a result of the above, Ms. Bosavanh shall be compensated for the following services :

| Activity | Number of Hours | Rate Applied | Total Amount |
| --- | --- | --- | --- |
| Reviewing case and for filing case in district court in 2009 | 1.0 | 2009 | $172.24 (1 x $172.24) |
| Filing the complaint and other case management activities in 2009 | 0.5 | 2009 | $86.12 (.5 x $172.24) |
| Communicating with Plaintiff regarding filing the case in district court in 2009 | 0.9 | 2009 | $155.02 (.9 x $172.24) |
| Case management including checking filings, reviewing court orders, coordinating with the government in 2010 | 1.0 | 2010 | $175.06 (1 x $175.06) |
| Review of the Commissioner's and Plaintiff's briefing submitted to the district court in 2010 | 1.0 | 2010 | $175.06 (1 x $175.06) |
| Teleconferencing with Plaintiff regarding status of the case including contract issues in 2010 | 0.6 | 2010 | $105.04 (.6 x $175.06) |
| Reviewing decision from the district court judge and case managing the appeal in 2011 | 1.0 | 2011 | $180.59 (1 x $180.59) |
| Reviewing the opening brief at Ninth Circuit in 2011 | 0.5 | 2011 | $90.30 (.5 x $180.59) |

reviewing federal court documents); and 9/30/09 - .2 hours (reviewing documents dropped off by client's interpreter for accuracy).

| | | | |
|---|---|---|---|
| Teleconferencing with Plaintiff regarding appeal during 2011 | 0.4 | 2011 | $72.24(.4 x. $180.59) |
| Case management activities regarding the appeal in 2012 | 1.0 | 2012 | $184.32(1 x $184.32) |
| Reviewing the reply brief at Ninth Circuit in 2012 | 0.5 | 2012 | $92.16 (.5 x 184.32) |
| Teleconferencing with Plaintiff regarding appeal during 2012 | 0.8 | 2012 | $147.46(.8 x $184.32) |
| Drafting the EAJA application in 2013 | 0.5 | 2013 | $93.51 (.5 x 187.02) |
| **Total** | **9.7** | ---------- | **$1,729.12** |

    *4.*    *Mr. Wilborn's Time*

The Court has reviewed Mr. Wilborn's request for attorney's fees. Defendant has argued that Mr. Wilborn spent an excessive amount of time on the opening and reply briefs at the district court, as well as at the Ninth Circuit. Specifically, the government contends that Mr. Wilborn should only be compensated for 9.38 hours of work for the opening brief and 4.2 hours for the reply brief filed at the district court level. Similarly, he should only receive compensation for 4 hours for preparing the opening brief and 4 hours for the reply brief filed at the Ninth Circuit.

As previously outlined, there were numerous issues presented in this case. The Court notes that Mr. Wilborn spent a total of 37.5 hours reviewing the record, and preparing the confidential letter brief, as well as, writing the opening and reply briefs presented before this Court. This amount is a reasonable. Mr. Wilborn spent an additional 39 hours preparing the briefs at the Ninth Circuit. A review of the pleadings reveals that some of the work done in the Ninth Circuit briefing was repetitive of arguments presented to this Court. Moreover, Mr. Wilborn billed 8.00 hours on 8/15/11 for reading the administrative record, and reviewing the briefs and the district court order. He also began drafting the opening brief during this time

period. It is unclear how much time was spent on each activity during this time period, however, extensive review of the administrative record or the pleadings at the district court level was not necessary since Mr. Wilborn completed the briefing in this action. As such, this entry will be reduced to 3.0 hours. Mr. Wilborn will be awarded 34 hours for competing the briefs at the Ninth Circuit.

Additionally, the Court notes that Mr. Wilborn has requested a total of 9 hours for the preparation of the Motion for Attorneys' Fees. While the Court finds the 1.5 hours requested for the initial EAJ application reasonable, the request for 7.5 additional hours for filing the reply is unreasonable. The Court will only reimburse Mr. Wilborn for 1.5. hours for the reply. Thus, Mr. Wilborn will only be compensated for a total of 3 hours for preparation of the EAJA fee motion. In accordance with the above, Mr. Wilborn will be compensated at the following rates :

| **Total Hours** | **Rate Applied** | **Total Amount** |
|---|---|---|
| .5 | 2009 ($172.24) | $86.12 (.5 x $172.24) |
| 37 | 2010 ($175.06) | $6,477.22 (37 x $175.06) |
| 15 | 2011 ($180.59) | $2,708.85 (15 x $180.59) |
| 26.25 | 2012 ($184.32) | $4,838.40 (26.25 x $184.32) |
| 3.0 | 2013 (187.02) | $561.96 (3.0 x 187.32) |
| **81.75** | ---------- | **$14,672.55** |

**ORDER**

Based on the foregoing, it is Plaintiff's Application for Attorneys' Fees is GRANTED IN PART. Plaintiff's counsel are entitled to an award in the total amount of $16,401.67 to be broken down as follows:

Ms. Bosavanh:  9.7 hours for total amount of $1,729.12.

Mr. Wilborn: 81.75 hours for a total amount of $14,672.55.

Plaintiff is also entitled to $ 22.00 in costs.

This amount should be payable to Plaintiff pursuant to *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010).

IT IS SO ORDERED.

Dated:   **May 30, 2014**                           **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE